**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

United States of America,     )
                       )
         Plaintiff,     ) Case No. 1:14-CR-17
                       )
    vs.                )
                       )
Corey Glass,         )
                       )
         Defendant.    )

<u>FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER</u>

In February 2014, the grand jury in this district returned an indictment charging Defendant Corey Glass, <u>inter alia</u>, with participating in a conspiracy from "on or about 2009, and continuing up to, and including, October 2012" to distribute and possess with intent to distribute one kilogram or more of heroin and five or more kilograms of cocaine in violation of 21 U.S.C. § 846.  Doc. No. 1.  In November 2014, Defendant and the government entered into a plea agreement in which Defendant agreed to plead guilty to a charge of conspiring to possess with intent to distribute at least 100 grams of heroin and at least 500 grams of cocaine in violation of 21 U.S.C. § 846 and 21 U.S.C. §§ 841(b)(1)(B)(i) & (ii). Doc. No. 38.  This offense carries a five-year mandatory minimum term of imprisonment. In the plea agreement, the parties agreed that  Defendant's criminal conduct was sufficient to meet the statutory elements of the offense.  The parties further  agreed to leave the amount of drugs attributable to Defendant's relevant conduct for determination by the Court at the time of sentencing.

The probation officer prepared a presentence report and calculated an advisory Sentencing Guidelines range.  The drug quantity tables of U.S.S.G. § 2D1.1 provided the

base offense level for the offense.  The probation officer found that Defendant's relevant conduct includes 25 kilograms of cocaine and 2.0414 kilograms of heroin.  The probation officer converted both substances to their marijuana equivalent, which was 7,041.40 kilograms of marijuana, and assigned a base offense level of 32.  U.S.S.G. § 2D1.1(c)(4).

The probation officer relied on three separate pieces of information in determining the weight of drugs involved in Defendant's relevant conduct.  First, the probation officer relied on admissions Defendant allegedly made to DEA agents in November 2013 in which he stated that "a couple of years earlier" he obtained 10 to 15 kilograms of cocaine and 1 kilogram of heroin "from another source."  PSR ¶ 14.  Second, the probation officer relied on the statement of an unidentified witness who was "prepared to testify that between 2005 and 2008, the defendant purchased between 20 and 30 kilograms of cocaine at $20,000 per kilogram."  PSR ¶ 16.  The same witness also stated that "[b]eginning in 2009 and continuing through October 2012, the defendant acquired between 5 and 10 kilograms of cocaine at the same price along with two to three kilograms of heroin for a total price of $90,000 to $100,000."  Id.  Third, and finally, there was 41.40 grams of heroin that Defendant sold to a confidential informant in October 2013.  PSR ¶¶ 11, 12.

The probation officer also found that Defendant is not entitled to a two-level reduction in the offense level under U.S.S.G. § 3E1.1(a) for acceptance of responsibility.  The probation officer concluded that Defendant has not accepted responsibility for the offense because, although he admitted in his change of plea to involvement with at least 100 grams of heroin and 500 grams of cocaine, he denied receiving heroin and cocaine for distribution between 2009 and 2012.  The probation officer found that Defendant's denial of involvement with cocaine and heroin between 2009 and 2012 is inconsistent with the

2

statement of facts from his plea agreement and, consequently, did not demonstrate acceptance of responsibility.  PSR ¶¶ 19-23.

There were no other adjustments applicable to determining the offense level for the offense.  Accordingly, the final offense level, as determined by the probation officer, was 32.  The probation officer then determined that Defendant has six points for his prior criminal record, placing him in Criminal History Category III.  The Sentencing Table provides an advisory sentencing range of 151 to 188 months of imprisonment for Criminal History Category III and an offense level of 32.   The probation officer recommended that the Court impose a sentence of 151 months of imprisonment.

Defendant raised three timely objections to the probation officer's determination of the advisory sentencing range, two of which are related.

First, Defendant objected to the probation officer's determination of the amount of drugs involved in the offense.  Defendant's position, as more specifically articulated in his sentencing memorandum, is that his offense involves only the smaller amounts of heroin he sold or attempted to sell to the confidential informant in October 2013.[1]  Defendant specifically denies being part of a conspiracy to distribute large amounts of cocaine and heroin between 2009 and 2012.  See Doc. No. 49 (Defendant's Sentencing Memorandum) at 7, 8, 9, 11.

Second, and relatedly, Defendant objected to the probation officer's determination that he has not accepted responsibility for his criminal conduct.  Defendant's argument essentially is that the probation officer has misconstrued his dispute over the amount of

_____

[1]      As explained further below, Defendant now also admits to selling 1 ounce, or 28.35 grams, of heroin to an individual named Tony Panke in November 2013.

3

drugs involved in the offense as reneging on his admission that he was involved in the drug trafficking conspiracy indicated in the plea agreement. He notes that the plea agreement specifically gave him the right to contest the amount of drugs involved in the offense. Defendant's position is that he is entitled to reductions in the offense level for acceptance of responsibility and entering a timely plea because he has admitted his criminal conduct and expressed remorse for his actions.

Third, Defendant objected to two criminal history points the probation officer assessed for committing the offense while under a criminal justice sentence. Defendant, however, conceded in both his sentencing memorandum and at the conclusion of the evidentiary hearing that even if this objection is sustained his Criminal History Category will still be III. Doc. No. 49, at 12.

This case came before the Court on July 20, 2015 for an evidentiary hearing on the amounts of drugs attributable to Defendant's relevant conduct. The government presented the testimony of Dwayne Williams and DEA Special Agent Jeremy Nissen on the amount of drugs involved in the offense. Defendant testified on his own behalf.

## A. Standard of Review

For purposes of calculating a defendant's advisory sentencing range, the government must prove the amount of drugs involved in the offense by a preponderance of the evidence. United States v. Gill, 348 F.3d 147, 151 (6th Cir. 2003); United States v. Keszthelyi, 308 F.3d 557, 576-78 (6th Cir. 2002). The sentencing court must err on the side of caution in determining what amount of drugs is more likely than not attributable to the defendant. Gill, 348 F.3d at 151; see also United States v. Walton, 908 F.2d 1289, 1302 (6th Cir. 1990)("[W]hen choosing between a number of plausible estimates of drug

4

quantity, none of which is more likely than not the correct quantity, a court must err on the side of caution."). If the amount of drugs involved in the offense is uncertain, the sentencing court may make a reasonable estimate. United States v. Hernandez, 227 F.3d 686, 699 (6th Cir. 2000). The court's estimate, however, must be supported by competent evidence with "some minimum indicium of reliability beyond mere allegation." Id. Finally, under the Sentencing Guidelines, the defendant's relevant conduct in a drug-trafficking offense includes "quantities of drugs 'that were part of the same course of conduct or common scheme or plan as the offense of conviction.'" United States v. Gibbs, 182 F.3d 408, 442 (6th Cir. 1999) (quoting U.S.S.G. § 1B1.3(a)(2)).

B. Summary of the Hearing Testimony

1. Dwayne Williams

Dwayne Williams is a co-defendant in a seven-person heroin trafficking conspiracy prosecuted before Judge Barrett in Case No. 1:12-CR-115 (S.D. Ohio). In that case, Williams pleaded guilty to count one of the indictment and in August 2014, Judge Barrett sentenced Williams to a mandatory minimum term of 10 years of imprisonment.

Williams testified that he has known Defendant for approximately twenty years. Williams stated that he was Defendant's source of supply. Williams claimed that beginning in the early 1990's, he sold Defendant small amounts of cocaine, gradually working up to sales of a half kilogram every month or so. Williams was incarcerated for a period of time at some point. He said that starting in the early 2000's, he and Defendant resumed their relationship. Williams claimed that between 2005 and 2008 he sold Defendant 20 to 30 kilograms of cocaine at approximately $20,000 per kilogram.

Williams said that the cocaine business "tapered off" around 2009. Williams claimed further that between 2009 and 2012 he sold Defendant 2 to 3 kilograms of heroin, at around $90,000 to $100,000 per kilogram, and a couple hundred pounds of marijuana, and "a little something" of cocaine. He also thought that he had sold Defendant some heroin in 9 ounce quantities. Williams admitted that by providing evidence against Defendant, he was hoping to receive sentencing consideration from the government in his own case and to get a reduction below the mandatory minimum sentence.

On cross-examination, Williams admitted that the amounts of heroin and cocaine he attributed to Defendant were "vague approximations." Williams also conceded that he had never been charged by the government for cocaine trafficking despite his apparent admission to selling large amounts of cocaine to Defendant and that he got a "free pass" for cocaine distribution.

### 2. Jeremy Nissen

Jeremy Nissen is the DEA case agent on Defendant's case. Agent Nissen testified that after his arrest, Defendant admitted to selling 10 to 15 kilograms of cocaine and 1 kilogram of heroin with Williams, although some of the heroin was bad. Nissen did not provide a timeframe for this admission. On cross-examination, Agent Nissen conceded that Defendant's alleged admission to trafficking in drugs with Williams was not tape recorded although the DEA had the necessary equipment on hand to do so. Nissen also conceded that the government did not seize any assets subject to forfeiture from Defendant, such as cash, jewelry or property.

### 3. The Defendant

Defendant denied buying cocaine and heroin from Williams and distributing it during the conspiracy period alleged in the indictment. Defendant testified that beginning around 2008, after he got caught up in a state probation violation, he began cooperating with Cincinnati police officers to investigate an individual named Michael Bell for drug trafficking. Defendant indicated that he believed that these officers were working with or for the DEA at the time. Defendant testified that he continued cooperating with these officers from 2008 to 2011 to investigate Williams. Defendant provided the names of several Cincinnati police officers with whom he had worked. During his cross-examination, Agent Nissen confirmed that the officers named by Defendant worked in cooperation with the DEA in some investigations.

Otherwise, according to Defendant, during the timeframe alleged in the indictment he was scraping by trying to make a living. Defendant testified that he worked a couple of legitimate jobs and was attending barber college. He did not have a home or apartment of his own. He traded his truck for an ownership interest in a bar/strip club but that venture failed when it lost its liquor license. Defendant was living with and supported by his mother at the time of his arrest.

Defendant testified that he was not actively selling drugs when "Baby Lee," the government's confidential informant, approached him about buying some heroin. Defendant admitted to "hooking up" Baby Lee on two occasions to buy small amounts of heroin. Defendant also testified that he was going to run a counterfeiting scam on "some Africans" using an ounce of heroin. Defendant also admitted discussing selling an ounce of heroin to an individual named Tony Panke. Defendant maintained, however, that he was not a

large-scale cocaine and heroin dealer, nor could he have been, given that he was cooperating with the DEA during the time alleged in the indictment.

C. <u>Findings of Fact and Conclusions of Law</u>

Based on the hearing testimony, the Court makes the following findings of fact. To the extent that the Court's findings of fact could be construed as conclusions of law, they are adopted as such.

1. Defendant's relevant conduct is limited to 98.1 grams of heroin. In making this finding, the Court accepts the amounts of heroin listed in paragraphs 11 and 12 of the presentence report. The Court also credits Defendant's testimony that he attempted to run a counterfeiting scam on "the Africans" involving 1 ounce of heroin, and his testimony that he sold or tried to sell 1 ounce of heroin to Tony Panke. Although the sale of heroin to Panke is uncorroborated by other evidence, the amount involved in this transaction is consistent with the other heroin sales Defendant consummated during the fall of 2013. Moreover, Defendant does not dispute these amounts and the transactions involving the confidential informant were apparently recorded by audio or videotape or both. In other words, there is reliable evidence to support the conclusion that Defendant is responsible for distributing or conspiring to distribute 98.1 grams of heroin.

2. The Court rejects Dwayne Williams's testimony that he and Defendant were involved in transactions for large amounts of cocaine and heroin from 2005 to 2012 because it is not credible or reliable. Williams' testimony is completely uncorroborated. While the uncorroborated testimony of a co-conspirator can be sufficient for instance to support a conviction, the Court, as the factfinder, is not required to accept it. <u>United States v. Henley</u>, 360 F.3d 509, 514 (6th Cir. 2004).

8

As Defendant's trial counsel highlighted during cross-examination, Williams has a significant motive to implicate Defendant as a serious drug-trafficker in order to reduce his own lengthy prison sentence. That motive substantially undercuts Williams's credibility. Additionally, as already stated, Williams's claim that Defendant participated in trafficking major amounts of cocaine and heroin over a five to seven year period is completely unsubstantiated. The absence of corroborating evidence undermines Williams's credibility. Williams also admitted that he was only giving "vague approximations" of the amount of drugs he sold to Defendant. This concession further reduces the reliability of Williams's testimony.

Moreover, there is no circumstantial evidence to support a conclusion that Defendant trafficked in up to 30 kilograms of cocaine and 3 kilograms of heroin. According to Williams, he and Defendant were involved in drug transactions totaling perhaps as much as $1.4 million dollars over five to seven years, yet the government did not seize or recover from Defendant any unexplained cash, property, or other indicia of drug-trafficking activity. See, e.g., United States v. Jackson-Randolph, 282 F.3d 369, 378 (6th Cir. 2002) (noting that evidence of the defendant's unexplained wealth can be probative of involvement in drug trafficking). This case is in direct contrast to Williams's case. There, the government indicted Williams for participating in a year-long conspiracy involving only 1 kilogram of heroin. Despite the fact that the conspiracy in Williams's case was substantially shorter in duration and involved significantly less drugs than are alleged to be involved in this case, the government seized from Williams $13,000 in cash, two big screen television sets, and numerous watches and other pieces of jewelry. See United States v. Williams, Case No. 1:12-CR-115-004, Doc. No. 172, at 7 (sentencing court's forfeiture order). Granting that

9

all drug-traffickers are not smart money managers, it seems likely to the Court that had Defendant actually been involved in a million dollars worth of drug sales, the government would have recovered from him some of the spoils of that activity in the course of its investigation. The fact that it did not supports a conclusion that Defendant was not involved in dealing in major amounts of cocaine and heroin.  Moreover, it seems implausible that if Defendant were buying large amounts of cocaine and heroin from Williams, his activities would not have been uncovered during the investigation of the heroin trafficking conspiracy of which Williams was convicted and which overlapped the conspiracy alleged in this case.

For all of those reasons, therefore, the Court rejects as unreliable Williams's testimony that Defendant is responsible for trafficking 30 kilograms of cocaine and 2 to 3 kilograms of heroin.

3. There is no *corpus delecti* concerning Defendant's alleged admission that he bought 10 to 15 kilograms of cocaine and 1 kilogram of heroin from Williams during the alleged conspiracy period.  The rule of *corpus delecti* prohibits a defendant from being convicted of a crime based solely on his uncorroborated confession.  United States v. Brown, 617 F.3d 857, 860 (6th Cir. 2010).  Thus, the *corpus delecti* rule holds "that a defendant's extrajudicial, post-offense statements must be corroborated with independent evidence in order to assure reliability and truthfulness."  United States v. Adams, 583 F.3d 457, 469 (6th Cir. 2009)(internal quotation marks omitted).  Although *corpus delecti* typically applies in determining whether the defendant is guilty of a substantive offense, the Court sees no reason why it should not apply in sentencing hearings, particularly where, as in this case, the government seeks to use a defendant's alleged confession to significantly increase his sentence.

10

Here, the government relies on Defendant's alleged post-arrest admission to establish that he bought and distributed 10 to 15 kilograms of cocaine and 1 kilogram of heroin during the alleged conspiracy period. There is, however, no independent evidence to corroborate the trustworthiness or reliability of Defendant's statement. There is no direct or circumstantial evidence supporting a conclusion that Defendant trafficked in large amounts of cocaine and heroin with Williams. The government certainly never recovered any cocaine from Defendant. There are no documents, records, audio or video surveillance tapes of drug transactions between Defendant and Williams. As discussed above, there is no circumstantial indicia of drug trafficking, such as unexplained wealth. Indeed, Defendant's personal financial circumstances point away from a conclusion that he was involved in large-scale drug trafficking. Additionally, the absence of specifics in Defendant's alleged confession about the timeframe and the manner and means in which he and Williams carried out the alleged drug-trafficking conspiracy cuts against the reliability of the confession. See, e.g., United States v. Valdez-Novoa, 780 F.3d 906, 925 (9th Cir. 2015) (stating that the specificity of the defendant's admission "bolsters its trustworthiness"); United States v. Sterling, 555 F.3d 452, 457 (5th Cir. 2009) (stating that the "detailed nature of [defendant's] confession provides an additional degree of corroboration").

There is Williams's statement that he sold Defendant large amounts of heroin and cocaine, but his testimony is unreliable for all of the reasons already explained. In other words, the Court does not find that Williams's unreliable testimony sufficiently corroborates Defendant's alleged admission as to the weight of drugs involved in the offense. See, e.g., Wong Sun v. United States, 371 U.S. 471, 488-89 (1963) (a co-defendant's unsigned

11

statement did not corroborate the defendant's post-arrest confession); United States v. Calderon, 348 U.S. 160, 165 (1954) (finding that the respondent's prior uncorroborated statements did not corroborate his admission); Brown, 617 F.3d at 863 (asking whether substantial independent evidence corroborated the defendant's confession).

The Court, therefore, concludes that Defendant's alleged confession does not reliably establish that he is responsible for 10 to 15 kilograms of cocaine and 1 kilogram of heroin.

4. In summary, the Court concludes that Defendant's relevant conduct is limited to 98.1 grams of heroin. Accordingly, Defendant's objection to the probation officer's determination of the amount of drugs involved in the offense is **SUSTAINED.**

5. Because Defendant readily admits that he sold or attempted to sell 98.1 grams of heroin, the Court concludes that he has accepted responsibility for his criminal conduct. Therefore, he is entitled to a three-level reduction in the offense level pursuant to U.S.S.G. §§ 3E1.1(a) & (b). Accordingly, Defendant's objection to the probation officer's conclusion that he is not entitled to reductions under § 3E1.1 is well-taken and is **SUSTAINED.**

6. Defendant's objection to the probation officer's determination of his Criminal History Category is **MOOT** because sustaining his objection would not place him in a lower category.

D. Revised Advisory Sentencing Guidelines

Based on the above findings of fact and conclusions of law, the Court finds that

Defendant's advisory sentencing guidelines range is as follows:

| | |
|---|---|
| Base offense level<br>(U.S.S.G. § 2D1.1(c)(9)) - (more than<br>80 grams but less than 100 grams<br>of heroin) | +22 |
| Acceptance of Responsibility<br>(U.S.S.G. § 3E1.1(a)) | -2 |
| Timely Plea<br>(U.S.S.G. § 3E1.1(b)) | -1 |
| Final Offense Level | 19 |
| Criminal History Category III | |
| Advisory Guidelines Sentencing Range | 37 to 46 months. |

Although the Sentencing Guidelines indicate a sentence of 37 to 46 months of

imprisonment, 21 U.S.C. § 841(b)(1)(B) mandates a sentence of at least five years of

imprisonment.  Therefore, the advisory sentencing range is 60 months of imprisonment.

U.S.S.G. § 5G1.1(b).

E. There Is Not A Factual Basis for the Court to Accept Defendant's Guilty Plea

Rule 11(b)(3) of the Federal Rules of Criminal Procedure require the sentencing

court to "determine that there is a factual basis for the plea" before entering judgment on

a defendant's guilty plea.  Fed. R. Crim. P. 11(b)(3).  In other words, before accepting the

guilty plea, the sentencing court must be satisfied that there is some evidence that the

defendant actually committed the offense.  United States v. Dennis, 549 Fed. Appx. 408,

414 (6th Cir. 2013).  The purpose of this rule is to "protect a defendant who is in the

13

position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." McCarthy v. United States, 394 U.S. 459, 467 (1969). In determining whether there is a sufficient factual basis for the plea, the sentencing court may consider a number of sources of information: "An inquiry might be made of the defendant, of the attorneys for the government and the defense, of the presentence report when one is available, or by whatever means is appropriate in a specific case." Fed. R. Civ. P. 11, Advisory Committee Notes to 1974 Amendments. A defendant cannot waive the requirement that the court find a factual basis for a guilty plea. United States v. Mobley, 618 F.3d 539, 546 (6th Cir. 2010).

As stated, Count 1 charges Defendant with conspiring to possess with intent to distribute in excess of 100 grams of heroin and 500 grams of cocaine between 2009 and 2012. After consideration of the presentence investigation report, Defendant's sentencing memorandum, and the evidence presented by the parties at the evidentiary hearing, the Court concludes that there is an insufficient factual basis to accept Defendant's plea of guilty to Count 1 of the indictment. Defendant denies conduct which would trigger the statutory mandatory minimum sentence and the conduct to which he does admit is not the crime charged by Count 1.

First, although the government presented the testimony of Dwayne Williams, who testified that he and Defendant trafficked in large amounts of cocaine and heroin, at least some of which activity took place during the conspiracy period, *Defendant specifically denies trafficking any drugs with Williams during the conspiracy period.* Indeed, in his sentencing memorandum, Defendant "vehemently denies" trafficking in kilogram weights of cocaine with Dwayne Williams. Doc. No. 49, at 8. There is no evidence or suggestion

14

in the record or by the government that Defendant trafficked heroin and cocaine during the conspiracy period with any one other than Williams. In other words, there is a factual dispute concerning whether Defendant trafficked heroin and cocaine during the conspiracy period and, if so, the quantity of drugs involved. Consequently, there is not a factual basis to conclude that Defendant conspired to distribute enough drugs during the conspiracy period to trigger the statutory mandatory minimum sentence. It is not a just a simple matter of relevant conduct - *Defendant denies that he committed an essential element of the offense.* Alleyne v. United States*, 133 S.Ct. 2151, 2155 (2013)("Mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." ); United States v. Dado, 759 F.3d 550, 570 (6th Cir. 2014)("[D]rug quantity is an element of the offense in § 841, since its effect is to increase the maximum penalty.").

The sentencing court lacks a factual basis for a plea if the defendant denies committing an essential element of the offense. See McCarthy, 394 U.S. at 467 ("The judge must determine that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty.")(internal quotations omitted). In a case particularly on point, United States v. Culbertson, 670 F.3d 183, 188-92 (2nd Cir. 2012), the Court concluded that the sentencing court lacked a factual basis to accept the defendant's guilty plea to conspiring to import more than 5 kilograms of cocaine (which increased his mandatory minimum sentence) because he consistently denied being responsible for more than 3

kilograms of cocaine.[2]  This case is similar to Culbertson because Defendant denies that

he is responsible for enough heroin and cocaine during the conspiracy period to trigger the

mandatory minimum sentence.  Similarly, in United States v. Hernandez-Rivas, 513 F.3d

753 (7th Cir. 2008), the defendant wanted to plead guilty to a charge of transporting illegal

aliens but consistently denied knowing that his car passengers were illegal aliens.  The

Court held that the district court did not err in concluding that the defendant's guilty plea

lacked a factual basis.  Id. at 759-62.  United States v. Skerret -Ortega, 529 F.3d 33 (1st

Cir. 2008), is also illustrative.  There, the Court held that the district court did not err in

rejecting the defendant's guilty plea because he denied responsibility for the crimes

charged against him.  See id. at 38 ("Because Skerret denied participation in the charged

offenses, the district court would have been unable to glean the relevant facts - even

accepting the prosecution's version of the evidence.").  Here, because Defendant does not

admit to conduct sufficient to sustain a conviction under § 841(b)(1)(B), his guilty plea lacks

a factual basis.

Second, for a number of reasons, the facts to which Defendant does admit do not

establish the offense of conspiring to possess with intent to distribute in excess of 100

grams of heroin and/or 500 grams of cocaine.

As recited above, supra, at 12, the amount of heroin Defendant admits selling

---

[2]      Additionally, the Culbertson Court stated that the district court should
accept the defendant's denial that he committed an essential element of the offense
unless the circumstances indicate that his denial is "unworthy of belief."  670 F.3d at
190 n.3  In this case, Defendant's denial that he trafficked cocaine and heroin with
Williams during the conspiracy period is not implausible for the reasons stated supra, at
8-12.

or attempting to sell in 2013 is actually less than 100 grams. Consequently, there is not a factual basis to conclude that Defendant conspired to distribute more than 100 grams of heroin.

Defendant's admitted conduct in selling heroin in October and November 2013 is more than a year after the conspiracy period alleged in the indictment, and, therefore, is too far removed to be "on or about" the period alleged in the indictment or to be considered a part of the conspiracy alleged in the indictment. United States v. Benson, 591 F.3d 491, 497 (6th Cir. 2010) (in order to avoid constructive amendment to indictment, proof offered regarding a date must be "reasonably near" the date alleged in the indictment); United States v. Zelinka, 862 F.2d 92, 97 (6th Cir. 1988) (admission of evidence of drug sale a few days after conspiracy date alleged in the indictment did not result in variance to indictment). In Benson, the Court held that the admission of evidence of a cash seizure that took place eleven months before the conspiracy dates alleged in the indictment did not result in a constructive amendment because that seizure occurred during the course of an ongoing conspiracy that covered a three-year span. Benson, 591 F.3d at 497. In this case, like Benson, the indictment alleges a conspiracy covering a three-year period. Unlike Benson, however, and as explained further below, Defendant's conduct in 2013 cannot be considered a continuation of conspiracy that, according to the indictment, concluded more than a year earlier in 2012.

At least one of Defendant's sales of heroin involved only a government informant. A defendant cannot be convicted of conspiracy if the only other participant in the conspiracy was a government informant. United States v.Hayden, 68 Fed. Appx. 530, 532 (6th Cir. 2003).

Defendant's conduct in selling heroin to the confidential informant on two occasions and to Tony Panke on one occasion does not reasonably suggest a conspiracy to distribute heroin. Given the small amounts involved in these transactions, this conduct more reasonably indicates buyer/seller relationships and/or discrete sales of narcotics for the personal consumption of the buyer rather than a conspiracy to distribute narcotics. See United States v. Deitz, 577 F.3d 672, 680-81 (6th Cir. 2009).[3]; see, e.g., United States v. Dekle, 165 F.3d 826, 829-30 (11th Cir. 1999) ("When two parties are charged with agreeing to distribute drugs, evidence that the parties understood their transactions to do no more than support the buyer's personal drug habit is antithetical to a finding of conspiracy.").

_____

[3]      In Dietz, the Court stated:

"Generally, a buyer-seller relationship alone is insufficient to tie a buyer to a conspiracy because 'mere sales do not prove the existence of the agreement that must exist for there to be a conspiracy.' " United States v. Cole, 59 Fed. Appx. 696, 699 (6th Cir. 2003). "Nonetheless, [we] have often upheld conspiracy convictions where there was additional evidence, beyond the mere purchase or sale, from which the knowledge of the conspiracy could be inferred." Id.; see also United States v. Nesbitt, 90 F.3d 164, 167 (6th Cir.1996) (concluding that evidence of advanced planning and multiple transactions involving large quantities of drugs may show that the defendant was involved in the conspiracy and was not merely engaged in a buyer-seller relationship); United States v. Anderson, 89 F.3d 1306, 1310 (6th Cir.1996) (holding that repeat purchases, purchases of large quantities, or other enduring arrangements, are sufficient to support a conspiracy conviction). We have cited with approval the Seventh Circuit's construct, which considers a list of factors to determine whether a drug sale is part of a larger drug conspiracy. Cole, 59 Fed. Appx. at 700 (citing United States v. Rivera, 273 F.3d 751, 755 (7th Cir. 2001)). These factors include: (1) the length of the relationship; (2) the established method of payment; (3) the extent to which transactions are standardized; and (4) the level of mutual trust between the buyer and the seller. Id. (citing Rivera, 273 F.3d at 755).

577 F.3d at 680-81.

To the extent that Defendant's conduct in selling heroin to the confidential informant and Tony Panke constituted a conspiracy, it is not part of the same conspiracy as the one alleged in the indictment, as clarified by the evidentiary hearing, because it took place at a significantly different time, involved different individuals, and much smaller quantities of drugs than the conspiracy allegedly involving Dwayne Williams.  Moreover,  Williams had been arrested and was in jail at the time Defendant sold heroin to Tony Panke and the confidential informant.   Therefore, Williams could not have been involved in any drug-trafficking conspiracy with Defendant that took place in 2013.  In other words, Defendant's conduct in 2013 is at variance with the conspiracy alleged in the indictment.  See United States v. Smith, 320 F.3d 647, 652 (6th Cir. 2003) ("The principal considerations in determining the number of conspiracies are the existence of a common goal, the nature of the scheme, and the overlapping of the participants in various dealings."); United States v. Warner, 690 F.2d 545, 548 (6th Cir.1982) ("If an indictment alleges one conspiracy, but the evidence can reasonably be construed only as supporting a finding of multiple conspiracies, the resulting variance between the indictment and the proof is reversible error if the appellant can show that he was prejudiced thereby.").

In summary, the Court finds that there is an insufficient factual basis to accept Defendant's guilty plea to conspiring to possess with intent to distribute more than 100 grams of heroin and more than 500 grams of cocaine.  Two principal reasons support this conclusion.  First, Defendant denies trafficking in kilogram quantities of cocaine and heroin with Dwayne Williams.  Second, the conduct to which Defendant does admit does not constitute the offense alleged in the indictment.

Accordingly, Defendant's plea of guilty to Count 1 is **VACATED.**  The Clerk of Court is directed to enter a not guilty plea on behalf of Defendant as to Count 1.  <u>Spiridigliozzi v. United States</u>, 117 Fed. Appx. 385, 391 (6th Cir. 2004) (" If [the district court] decides there was no factual basis for a guilty plea after accepting it, the court should vacate the plea and enter a plea of not guilty on behalf of the defendant.") (emphasis omitted).  The Court's case administrator shall set this case for a status/scheduling conference at the earliest convenient time.

**IT IS SO ORDERED**

Date August 26, 2015                         s/Sandra S. Beckwith
                                         Sandra S. Beckwith
                                   Senior United States District Judge

20